UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA MCCARTHY,

                Plaintiff,                                  Hon. Sally J. Berens

v.                                                    Case No. 1:20-cv-543

FORGE INDUSTRIAL
STAFFING, INC,

                Defendant.

_____/

## OPINION AND ORDER

Plaintiff Patricia McCarthy has sued her former employer, Forge Industrial Staffing, Inc., alleging that it violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws Ann. § 37.1101, *et seq*. (Counts I and II), by failing to provide a reasonable accommodation. McCarthy also alleges that Forge violated the ADA by failing to engage in the required interactive process after she proposed a reasonable accommodation (Count III). Finally, she alleges that Forge damaged her personal property, resulting in a conversion (Count IV).

Presently before the Court is Forge's Motion for Summary Judgment (ECF No. 47), which is fully briefed and ready for decision.[1] In addition, Forge has filed a Motion to Strike Plaintiff's Evidence Offered in Opposition to Forge's Motion for Summary Judgment. (ECF No. 52). For the following reasons, the Court will **DENY** Forge's motion to strike and **GRANT IN PART AND DENY IN PART** Forge's motion for summary judgment.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have me conduct all further proceedings, including entry of judgment, in this case. (ECF No. 9.)

# I. Background[2]

Forge is engaged in the business of providing light industrial workers to employers within various business sectors, including automotive and food packaging. (ECF No. 48-3 at PageID.286–87.) On June 4, 2018, Forge hired McCarthy as a part-time Office/Corporate Administrator to work in its Grand Rapids, Michigan office. (ECF No. 17 at PageID.65; ECF No. 51-1 at PageID.445.) McCarthy's primary duties in that position included handling Affordable Care Act (ACA) issues/ tracking of temporary staff (Service Associates) leased to third parties; completing background checks and employment verifications for temporary staff; creating weekly, monthly, and yearly financial reports; and data entry. (ECF No. 17 at PageID.65; ECF No. 51-1 at PageID.449; ECF No. 54-1 at PageID.577–78.) Her insurance activities included enrolling employees into benefit plans, waiving employee coverage if needed, answering employee questions by phone about coverage or benefits, and communicating with insurance companies and third-party administrators. (ECF No. 48-1 at PageID.185, 198–200, 203.) To facilitate ACA enrollments, Forge, through a third party, sent temporary employees postcards notifying them that because of the ACA, they would be enrolled in Forge's health insurance plan. Because temporary employees often failed to update their addresses, many postcards were returned to Forge as undeliverable. McCarthy would then enter this information into Forge's system. (ECF No. 48-4 at PageID.305–07; ECF No. 51-1

---

[2]  In its supporting brief, Forge cites deposition transcript pages it has filed in support of its motion. In some instances, the cited pages are missing from the filing. For example, on page 3 of its brief, Forge cites pages 32, 33, and 55 of McCarthy's deposition transcript and page 9 of Brian Oele's deposition transcript. (ECF No. 48 at PageID.149.) These pages were not included in the brief filed in the docket or in the judge's copy provided to the Court. These were not the only instances of missing pages. Although the Court is not obligated to search the record for either party in a summary judgment motion, *see In re St. Clair Clinic, Inc.*, No. 94-3943, 1996 WL 6531, at *2 (6th Cir. Jan. 8, 1996) (noting that "the trial court is under no obligation to search the entire record to establish that it is bereft of a genuine issue of material fact" (internal quotation marks omitted)), it has looked to other filings for the missing pages. If missing pages were not elsewhere in the record, the Court simply disregarded the record cite.

at PageID.450.) In addition to her foregoing duties, McCarthy and four other clerical staff took turns answering calls that came in through the general line and directed them to the appropriate person. (ECF No. 48-1 at PageID.197–98; ECF No. 51-1 at PageID.449.) McCarthy performed her job duties primarily with a computer, a telephone, and a printer. (*Id.* at PageID.193–94.)

McCarthy reported directly to Betsy Yonkers, Forge's Claims Manager, who handled workers' compensation claims. (ECF No. 48-4 at PageID.290–91.) Americo Teran, who at the time was the Assistant Manager of Human Resources, worked closely with, and also supervised, McCarthy. (ECF No. 48-2 at PageID.260, 263.) Because Forge had hired McCarthy to take over some of Teran's ADA duties, McCarthy and Teran sat in adjacent cubicles, and McCarthy often asked Teran questions pertaining to Forge's administration of its ACA responsibilities. (ECF No. 48-2 at PageID.264–65.) Teran also assisted McCarthy and the other clerical staff in answering calls that came in through the general office line. (ECF No. 51-1 at PageID.449.) Yonkers dealt directly with McCarthy regarding preparation of the corporate financial reports. (ECF No. 48-4 at PageID.48-4; ECF No. 51-12 at PageID.476.)

In June 2018, shortly after Forge hired her, McCarthy hurt her hip. The injury did not heal and worsened through early 2019. (ECF No. 51-1 at PageID.445.) In late February or early March 2019, McCarthy moved to South Haven, Michigan, and requested to work from Forge's Holland, Michigan, office, which was closer to McCarthy's home than the Grand Rapids office. After checking with Jessie Washburn, Forge's Human Resources Director, Yonkers denied the request due to insufficient space at the Holland office and because Forge's corporate operations and information were located at the Grand Rapids office. (ECF No. 48-1 at PageID.190–91; ECF No. 48-4 at PageID.291.)

On March 11, 2019, McCarthy submitted a doctor's note requesting that Forge allow her to park close to the door at work to accommodate her hip injury and allow her to stay off her feet. Forge granted the request. (ECF No. 48-1 at PageID.208–09, 239.) Around the same time, McCarthy's doctor recommended hip surgery, and on March 13, 2019, he completed a Family Medical Leave Act (FMLA) request for McCarthy to submit to Forge. (ECF No. 48-1.) The request indicated that the surgery was scheduled for April 15, 2019, and that McCarthy would be totally incapacitated commencing that date. However, it also indicated that McCarthy could work from home beginning April 29, 2019, through May 27, 2019—the end of her period of incapacity. (*Id.* at PageID.242–43.) McCarthy's doctor also issued a note specifying restrictions, which indicated that McCarthy may work from home beginning April 29, 2019, through May 27, 2019, and that "[i]f the employer is unable to accommodate the restrictions listed, it is the responsibility of the employer to place the employee off work." (ECF No. 51-6.) In connection with her FMLA leave request, McCarthy asked Yonkers about working from home with a laptop during her medical leave, and Yonkers said that she would have to check with Washburn.[3] (ECF No. 51-1 at PageID.445.) On March 26, 2019, McCarthy emailed Teran asking about the status of Yonkers's

---

[3] Forge states in its statement of facts that "[a]lthough Plaintiff now claims her request to work from home was due to her upcoming surgery, she did not inform Yonkers or anyone else at Forge of any such surgery at the time she made her initial request." (ECF No. 48 at PageID.151.) However, the evidence Forge cites does not necessarily support this contention. First, the evidence is not conclusive that McCarthy actually made two requests to work from home. In her deposition, Yonkers referred to McCarthy's request "to work from Holland in home prior to her surgery" (ECF No. 48-4 at PageID.291), but Holland is the location of Forge's office, not McCarthy's then-home. Moreover, in her deposition, McCarthy was asked: "And at that point you also asked if it would be possible to work remotely because of the upcoming surgery?" McCarthy responded, "Correct." (ECF No. 48-1 at PageID.190–91.) And while Yonkers did refer to McCarthy's request for reconsideration of the denial to work from home, she noted that the request was in connection with "the surgery." (ECF No. 48-4 at PageID.292.) Thus, at a minimum, there are questions of fact as to the number of work-from-home requests McCarthy made to Yonkers and whether, at the time she made her request to work from home using a laptop computer, she informed Yonkers that the request was based on her surgery.

inquiry of Washburn about permitting McCarthy to work from home while she was on leave. Teran responded that they would not let any of McCarthy's tasks "fall behind" while she was on leave and that "work[ing] from home is just not going to be an option." (ECF No. 48-1 at PageID.248–49.) Although McCarthy did not meet the FMLA's eligibility requirements for unpaid leave, Forge granted her request for leave through May 27, 2019. (ECF No. 48-1 at PageID.210–11, 248.)

On May 29, 2019, McCarthy submitted a new note from a physician's assistant stating that she was "[t]otally incapacitated from employment until follow up appointment." (*Id.* at PageID.250.) The note did not mention working from home. However, that same day, McCarthy emailed Yonkers and Teran about the note, stating that her doctor would not allow her to return to work until the next follow-up appointment on July 10. McCarthy also reiterated that she would be happy to work from home if Forge reconsidered its denial. On May 30, 2019, Yonkers responded to the email, acknowledging McCarthy's "frustration," and stating that everyone in the office was helping to cover her duties. Yonkers did not acknowledge McCarthy's renewed request to work from home but told her to keep them informed if there was any change. (*Id.* at PageID.251–52.) On July 10, 2019, the physician's assistant issued another note stating that McCarthy was totally incapacitated from employment until the next follow-up appointment. The note did not mention working from home. (*Id.* at PageID.253.) The same day, McCarthy emailed Teran and Yonkers that her doctor had restricted her another eight weeks, until September 4, 2019. On July 11, 2019, Teran responded that he would have to submit the request to Brian Oele, Forge's Director of Human Resources and Risk Management, as the extension was beyond the 12 weeks of leave allowed by the FMLA. Later that day, Teran informed McCarthy that Forge would not grant another extension and was terminating her employment. (*Id.* at PageID.254–56.)

While Forge employed McCarthy, it did not allow office administrators or other hourly staff to work from home, primarily due to security and confidentiality concerns about the sensitive personal information it maintained. (ECF No. 48-2 at PageID.269–70; ECF No. 48-4 at PageID.298–99.) However, salaried personnel (managers) had the ability to work from home, and did so on occasion, because they were issued Forge-owned devices. (ECF No. 48-2 at PageID.270; ECF No. 48-6 at PageID.318–19.)

## II.   Discussion

### A.    Motion to Strike

Forge moves to strike several statements in McCarthy's affidavit in support of her response to Forge's motion for summary judgment because they are not based on McCarthy's personal knowledge of the asserted facts. In addition, Forge argues that the unsworn expert report of Phil Austin, an IT Systems Engineer, regarding the availability of technology to provide a secure means of allowing McCarthy to work remotely while at Forge, is inadmissible. (ECF No. 51-18.) As such, Forge contends that McCarthy's statements and Austin's report should be stricken from the summary judgment record.

Forge's motion is, in reality, an objection pursuant to Federal Rule of Civil Procedure 56(c)(2), which provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Under this rule, which was added by the 2010 amendments to Rule 56, the appropriate objection is "not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011). As explained in *Forward Magazine*, the objection is similar to a trial objection, and the proponent of the evidence has the burden to "'show that the material is admissible as presented or to explain the admissible form that is anticipated.'" *Id.* (quoting Fed. R. Civ. P. 56 advisory committee

6

comments). The 2010 amendment eliminates the need for a separate motion to strike challenged evidence. *See Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 737 (S.D. Ohio 2017) ("A party need not file a separate motion to strike when challenging evidence submitted in support of a motion for summary judgment."); *Foreword Magazine*, 2011 WL 5169384, at *2 n.1 ("As a result of the 2010 amendments, motions to strike are no longer appropriate."). Thus, when a party files a motion to strike evidence, a court may properly treat it as an objection pursuant to Rule 56(c)(2). *Foust v. Metropolitan Sec. Servs., Inc.*, No. 3:10-CV-340, 2011 WL 4832570, at *4 (E.D. Tenn. Oct. 12, 2011); *Foreword Magazine*, 2011 WL 5169384, at *2 n.1.

### 1. McCarthy's Affidavit

Forge contends that two groups of statements in McCarthy's affidavit should be disregarded because they are not based on personal knowledge and thus would not be admissible at trial. Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (noting that Rule 56(c)(4) "limits the matter to be properly included in an affidavit to facts, and the facts introduced must be alleged on personal knowledge" (quoting 10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2738 (3d ed. 1998))). An affidavit that does not meet these requirements "may be disregarded on summary judgment." *Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 304 (6th Cir. 2016).

The first group of statements concerns what Forge allegedly "acknowledged" or "admit[ted]":

- "Forge acknowledged that after my surgery I was only incapacitated from doing work while physically at Forge's office, but I could work from home starting on May 27, 2019. This ability to work from home did not change after this date." (¶ 20.)

- "Forge admits that except for the Company policy prohibiting me from working from home, I would have been able to work from home." (¶ 21.)
- "Forge admits they were not relying on the last doctor note that omitted the reference [sic] me working from home, but only relied on the company policy about hourly workers telecommuting, as the basis to deny my accommodation request. Forge also admits they always understood my condition was slowly getting better, and they did not consider the doctor's omission of the reference to be working from home to be meaningful." (¶ 22.)

(ECF No. 51-1 at PageID.447.) Forge contends that McCarthy provides no foundation to show that these statements are based on her personal knowledge. The Court agrees. These statements as to what Forge acknowledged or admitted are essentially legal conclusions without supporting facts. Certainly, McCarthy can testify about her own physical and mental abilities to work from home following her surgery, but the other portions of her statements concerning what Forge admitted or acknowledged are largely argument that is not properly considered in an affidavit on summary judgment. *See Board of Forensic Document Exam'rs, Inc. v. American Bar Ass'n*, No. 16-v-2641, 2017 WL 11558075, at *2 (W.D. Tenn. Jan. 19, 2017) (excluding statements that consisted "largely of inadmissible argument, speculation, and hearsay and set[] forth few 'facts' based on plaintiff's first-hand knowledge" (footnote omitted)). McCarthy's response to Forge's motion to strike confirms that these statements are essentially inadmissible argument, as she concedes that they are based on her interpretation of Teran's email responses and Forge employees' deposition testimonies. (ECF No. 54 at PageID.567.) McCarthy is free to argue these points, and has done so, in her brief. Thus, the Court will not consider these statements in deciding Forge's summary judgment motion.

The second group of statements concerns McCarthy's ability to work from home:

- "I could perform all of the essential functions of my job from home, if granted this request by Forge." (¶ 17.)
- "If working from home, I would have been able to communicate verbally and effectively with management and co-workers over the telephone, since my position did not required [sic] face-to-face interaction." (¶ 24.)

8

- "If working from home, I would have the ability to answer phone calls and forward calls as necessary, even answering all of the calls that came into the general number, if so requested by Forge." (¶ 25.)
- "If working from home, I would have been able to review, print, scan and mail private and confidential documents which were located in or sent to the Forge office or on Forge systems by use of standard office equipment such as a printer and scanner." (¶ 26.)
- "Any collaboration with co-workers to do my job could have been done over the telephone since my job did not require face to face interaction with anyone." (¶ 28.)
- "I was considered a good employee and could have performed all of the essential functions of my job from home with a computer, telephone, scanner and printer, and I would have done it effectively from home." (¶ 30.)
- "My phone at work had a button that allowed calls to be forwarded, so any call coming into my line could be forwarded to my home. If I was working from home, if requested by Forge, I could have answered every call into the general number and forwarded the call to the correct person." (¶ 34.)
- "I was also capable of doing jobs of other clerical staff, such as data entry, to free up the 5 minutes a day it would take someone to scan the few pieces of mail that I was responsible for addressing." (¶ 41.)

(*Id.* at PageID.449–50.) Forge argues that the Court may not consider these statements in deciding its motion for summary judgment because McCarthy had never worked from home for Forge and thus lacks personal knowledge about what functions of her job she could have performed at home. It further contends that McCarthy provides no foundation for her assertions as to the technology that would have been necessary to allow her to perform the functions of her job remotely and that McCarthy's claim that she could have performed job functions of the other clerical staff (data entry) is nothing more than speculation, as she had never performed other employees' jobs. (ECF No. 52 at PageID.119.)

McCarthy had performed her job at Forge for approximately ten months at the time she submitted her FMLA request and, given this experience, would have been familiar with her job functions, the equipment that she needed to perform them, the circumstances she normally encountered on a day-to-day basis, and her home environment. Indeed, there is no dispute that a computer, a telephone, and perhaps a printer were the primary tools McCarthy required to perform

9

her job. She also would have known the extent of personal interaction her job entailed at Forge's offices and whether it was crucial to her job functions.

Although McCarthy had never performed her job remotely, she is competent to give her own opinion about whether she could have performed the essential functions of her job at home if she had the necessary equipment and the necessary secure remote access to Forge's network and drives. Pursuant to Fed. R. Evid. 701, lay opinion is admissible when it is based on personal knowledge or observation and is helpful to understanding the witness' testimony or determining a fact in issue. *See Loadman Grp., LLC v. Banco Popular N. Am.*, No. 4:10cv1759, 2013 WL 1154528, at *3 (N.D. Ohio Mar. 19, 2013) (noting that "inferences, thoughts, and opinions" may be included in an affidavit so long as they are "premised on firsthand observations or personal experience, and established by specific facts" (citing *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1355 n.2 (6th Cir. 1996), and *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 87 (7th Cir. 1998))); *Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-CV-679, 2009 WL 3718613, at *1 (W.D. Mich. Nov. 4, 2009) ("Rule 701 does not preclude business owners, officers, and employees from offering testimony based on 'particularized knowledge that the witness has by virtue of his or her position in the business.'" (quoting Fed. R. Evid. 701 advisory committee's note)). McCarthy has the requisite personal knowledge and experience to testify that she could have successfully worked from home with the proper equipment. Likewise, because McCarthy performed data entry at Forge, she would be competent to testify about her ability to absorb data entry duties of other clerical staff.

However, to the extent McCarthy asserts that Forge's technology would have allowed her to work from home—for example, that Forge had the hardware and/or software in place to provide her secure remote access to its network or that Forge's telephone system could have forwarded

calls from Forge's general phone line to her home and allowed her to direct the calls to the proper person at Forge's office—such testimony is beyond the scope of McCarthy's knowledge, at least as set forth in her affidavit. Although McCarthy clearly has personal knowledge that her work phone had a call forwarding feature that could have forwarded calls to her home, she provides no foundation for her assertion that she could have directed calls forwarded to her home to the proper person at Forge. She does not state that she or another Forge employee had ever done this, nor does she provide the factual basis for how this would be done once the call was forwarded to her home.

### 2.    Expert Report

Forge also contends that that the Court should disregard the Austin expert report McCarthy attached to her response because the report is unsworn. Forge further asserts that because Mr. Austin's report speaks in terms of technology available "[i]n today's world" and was issued on February 5, 2021, almost two years after the events in this case occurred, it does not speak to the technology available while McCarthy was employed by Forge, nor does it address the technologies that Forge actually used during the relevant time. (ECF No. 52 at PageID.519–20.)

To begin, as McCarthy correctly notes, all of the cases Forge cites, including *Sigler v. American Honda Motor Co.*, 532 F.3d 469 (6th Cir. 2008), and *Pack v. Damon Corp.*, 434 F.3d 810 (6th Cir. 2006)—both of which specifically held that unsworn Rule 26(a)(2)(B) expert reports may not be considered on summary judgment—were decided before the 2010 amendments to Rule 56 eliminating certain admissibility requirements. *See Malee v. Anthony & Frank Ditomaso, Inc.*, No. 1:16CV490, 2018 WL 1805402, at *2 (N.D. Ohio Apr. 16, 2018) (noting that "[t]he *Sigler* case was decided before Rule 56 was amended in 2010, which omitted much of the admissibility requirements found in the previous iteration of Rule 56"); *Hope v. Hewlett-Packard Co.*, No. 14-11497, 2016 WL 8273781, at *2–3 (E.D. Mich. Mar. 3, 2016) (observing that because *Sigler* and

*Pack* were decided under Rule 56 as it existed prior to the 2010 amendments, they must be considered in light of the amendment, which "worked a sea change in summary judgment practice and introduced flexible procedures in place of hard and fast rules"). The procedure described above therefore applies. That is, because Forge has objected to the admissibility of the expert report, McCarthy has the burden of explaining how she intends to present the information in Mr. Austin's report in admissible form. McCarthy has met this burden by explaining that she can present this information through Mr. Austin's testimony if he is qualified as an expert at trial and his testimony meets the other requirements of Fed. R. Evid. 702. (ECF No. 54 at PageID.574.)

Forge's remaining objections fail as well. First, nothing about Mr. Austin's "in today's world" reference suggests that his opinions are limited to technology existing at the very moment he issued his report. The phrase is often used to denote the present age, as opposed to the particular day, month, or year in which it is used. The content of the report indicates that it refers to modern technology—for example, VPNs, or virtual private networks, which have been around for years— not simply technology that existed in 2020 or 2021. Moreover, in her response, McCarthy provides an affidavit from Mr. Austin, who confirms that the computer technology discussed in his report was available and commonplace during McCarthy's employment with Forge. (ECF No. 54-3.) Finally, the fact that Mr. Austin's report fails to address the technology Forge had in place at the relevant time is not a basis for disregarding the report, as its purpose is to demonstrate the types of technology Forge could have used to provide a secure remote connection as part of a reasonable accommodation.

### B.    Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

12

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### 1.      ADA/PWDCRA Claims

As noted above, McCarthy brings failure-to-accommodate claims under both the ADA and the PWDCRA. The Sixth Circuit has observed that the PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (citation omitted). Because both parties essentially address the failure-to-accommodate claim in a single analysis, the Court will analyze both claims in a unitary analysis under the ADA. *See Fraker v. City of Grand Rapids*, No. 1:18-cv-1444, 2020 WL 5642254, at *6 (W.D. Mich. Sept. 4, 2020); *Notarnicola v. Johnson Controls Inc.*, No. 12-11331, 2014 WL 1304591, at *7 (E.D. Mich. Mar. 28, 2014).

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A failure to make a reasonable accommodation constitutes disability discrimination. 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case of failure to accommodate, a plaintiff must show that: (1) she is disabled under the ADA; (2) she is otherwise qualified for the position, with or without a reasonable accommodation; (3) her employer knew or had reason to know of her disability; (4) she requested a reasonable accommodation; and (5) the employer failed to provide the reasonable accommodation. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015). A failure-to-accommodate claim

13

relies on direct evidence. *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 2022 WL 682540, at *3 (6th Cir. Mar. 8, 2022) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)). Once the plaintiff shows that her employer denied her a reasonable accommodation, the burden shifts to the employer to show that the accommodation would have imposed an "undue hardship" on the employer. *Gleed v. AT&T Mobility Servs., LLC*, 613 F. App'x 535, 538 (6th Cir. 2015) (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002)).

Here, Forge does not dispute that McCarthy was disabled under the ADA, that it was aware of her disability, and that she requested an accommodation. Thus, the issues in contention are whether McCarthy is "otherwise qualified" and whether the accommodation she proposed was reasonable. Because the issue in this case is whether in-person attendance was an essential function of McCarthy's position, "the essential functions and reasonable accommodation analyses run together." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015).

An individual is "otherwise qualified" if she can perform the "essential functions" of the job "with or without reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) (quoting 42 U.S.C. § 12111(8)). "Whether a job function is essential 'is a question of fact that is typically not suitable for resolution on a motion for summary judgment.'" *Id.* at 1039 (quoting *Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013)). The "fundamental job duties" of a position constitute its "essential functions." 29 C.F.R. § 1630.2(n)(1). "[M]arginal functions of the position" are not considered essential. *Id.* In other words, "[a] job function is essential if its removal would fundamentally alter the position." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (quotation marks and citations omitted). "A job function may be considered essential because (1) the position exists to perform the function, (2) a limited number of employees are available that can perform it, or (3) it is highly specialized." *Rorrer* (citing 29

C.F.R. § 1630.2(n)(2)). The ADA cites "the employer's judgments" and the employer's "written description" of the job as pertinent considerations in determining whether a function is essential. 42 U.S.C. § 12111(8). Other factors set forth in the applicable regulations include: (1) the amount of time spent on the job performing the function; (2) the consequences of not requiring the incumbent to perform the function; (3) the terms of a collective bargaining agreement; (4) the work experience of past incumbents in the job; and/or (5) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3)(iii)–(vii).

The Sixth Circuit has said that "[r]egular, in-person attendance is an essential function—and a prerequisite to essential functions—of most jobs, especially the interactive ones." *Ford Motor Co.*, 782 F.3d at 762–63. In such circumstances, "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (citation omitted). The court in *Ford* noted that, particularly where a job is interactive, the factors set forth in 29 C.F.R. § 1630.2(n)(3) will usually "point toward finding regular and predictable on-site attendance essential." 782 F.3d at 762. Nonetheless, it did not hold that in-person attendance is an essential function of all jobs. *Id.* at 762–63; *see Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 392 (6th Cir. 2017) (observing that "[t]he *Ford* decision leaves open the possibility that regular attendance might not be an essential function of every job"). Nor does *Ford* give employers a blanket pass on considering at-home work as a reasonable accommodation. In fact, the court pointed out that "[t]he ADA encourages—indeed, requires—employers to make reasonable accommodations for its employees, including allowing telecommuting under the proper circumstances." *Id.* at 764 (citing 42 U.S.C. § 12111(9)(B)); *see Adams v. District of Columbia*, 50 F. Supp. 3d 47, 54 (D.D.C. 2014) ("It is true that an employer must generally consider

telecommuting as a potential form of reasonable accommodation."). To aid this analysis the Equal

Employment Opportunity Commission has provided the following guidance:

> Several factors should be considered in determining the feasibility of working at home, including the employer's ability to supervise the employee adequately and whether any duties require use of certain equipment or tools that cannot be replicated at home. Other critical considerations include whether there is a need for face-to-face interaction and coordination of work with other employees; whether in-person interaction with outside colleagues, clients, or customers is necessary; and whether the position in question requires the employee to have immediate access to documents or other information located only in the workplace. An employer should not, however, deny a request to work at home as a reasonable accommodation solely because a job involves some contact and coordination with other employees. Frequently, meetings can be conducted effectively by telephone and information can be exchanged quickly through e-mail.

https://www.eeoc.gov/laws/guidance/work-hometelework-reasonable-accommodation.

### a.    Total Incapacitation

Citing *Aston v. Tapco International Corp.*, 631 F. App'x 292, 297 (6th Cir. 2015), for the

proposition that the relevant time for determining an employee's "qualified individual" status is

the time of her discharge, Forge contends that it is undisputed that McCarthy could not perform

the essential functions of her job with or without an accommodation because the last two doctor's

notes that McCarthy submitted to Forge stated that she was "[t]otally incapacitated from

employment until follow up appointment." (ECF No. 4-1 at PageID.25, 253.) Forge points out that

neither note mentioned working from home or any other accommodation that would have allowed

McCarthy to perform the essential functions of her position. It further argues that the last note

would have kept McCarthy off work until at least September 4, 2019, which was five months after

her leave began and two months after she exhausted her FMLA leave. (ECF No. 8 at PageID.159.)

However, a reasonable jury could conclude that, despite the last two notes, McCarthy was not

totally incapacitated from working from home, had Forge had approved her request. First, it is

undisputed that McCarthy's FMLA request and the initial note from her doctor indicated that she

could work from home beginning April 29, 2019, through May 27, 2019. (ECF No. 51-6.) Second, although McCarthy's doctor continued her on leave through September 2019 because her hip was not healing as expected, nothing in the record suggests that her condition through July 2019 worsened such that the prior work-from-home medical authorization became invalid. And despite Forge's argument, the evidence shows that its denial of McCarthy's requested accommodation had nothing to do with the absence of work-from-home authorization in the May and July notes. The March 13, 2019 doctor's note contained a medical authorization to work from home, yet Teran advised McCarthy that it was "just not going to be an option." (ECF No. 48-1 at PageID.248–49.) Instead, as Teran explained in his deposition, it was Forge's "company policy that employees are not able to work from home" that resulted in the denial, rather any limitation imposed by McCarthy's doctor. (ECF No. 51-12 at PageID.483–84.) Finally, McCarthy's doctor explains in an affidavit that McCarthy would have been able to work from home when the May and July notes were issued, but the authorization was not included because McCarthy had indicated that Forge was not allowing her to work from home. (ECF No. 51-5 at PageID.460–61.)

### b.    In-Person Attendance

Forge offers several bases for finding that McCarthy could only perform the essential functions of her position at the office. First, citing its attendance policy and McCarthy's deposition admission that she was told to perform her job duties at the office, (ECF No. 48 at PageID.161), Forge says that its policy was that all employees—even salaried employees who are given remote access—are expected to perform their job duties at the office. (ECF No. 48-2 at PageID.274; ECF No. 48-4 at PageID.299.) But a policy requiring on-site attendance is not, alone, enough to trump the ADA's requirement that an employer *consider* at-home work as a reasonable accommodation. Moreover, as McCarthy points out, Teran and Oele testified that salaried employees and staffing

consultants were considered to be "at work" in accordance with the attendance policy when they worked remotely. (ECF No. 40 at PageID.489, 495.)

Next, Forge contends that the interactive nature of McCarthy's position mandated her physical presence in the office. It notes that if McCarthy worked from home, she could not take turns with her co-workers answering calls that came in through the general office number. Forge also asserts that there were collaborative elements to her position that could only occur in the office. It cites Yonkers's testimony that she met daily with McCarthy and other staff in the morning and throughout the day to review expectations for the day or week, and simply to have casual work conversations. Yonkers also said that she often met with McCarthy to review the corporate reports and assisted her in correcting errors and understanding why they occurred. (ECF No. 48-4 at PageID.295–97.) Similarly, Forge points to Teran's testimony that McCarthy sat in the next cubical and would often ask him questions pertaining to insurance and/or the ACA, particularly when she confronted new or novel situations. (ECF No. 48-2 at PageID.264–65.)

McCarthy disputes that she was required to be at work to perform the essential functions of her job. First, she disputes that answering calls to the general office line was an essential function of her position. She points to the job posting for her replacement, and its list of duties that did not include answering phone calls. (ECF No. 51-12 at PageID.479; ECF No. 51-17 at PageID.508.) She also states in her affidavit that she spent no more than about five minutes per day answering and redirecting calls that came in through the general line, and four other clerical staff, along with Teran, when available, would also handle such calls throughout the day. (ECF No. 51-1 at PageID.449.) Given that answering phone calls to the general line was not part of Forge's written description for McCarthy's position, involved a minimal amount of her time each day, required no specialization, and was performed by four to five other employees who could

18

answer the phone in McCarthy's absence, a reasonable jury could conclude that this was a marginal, rather than essential, function of McCarthy's position. As for interaction with Teran and Yonkers, McCarthy points to Teran's testimony that McCarthy's duties under his supervision did not require face-to-face interaction (ECF No. 51-12 at PageID.476–77), and Yonkers's admission that she and McCarthy could have reviewed reports over the phone. (ECF No. 48-4 at PageID.297.) Moreover, while McCarthy admits meeting with Yonkers about the reports when she first joined Forge, she says that those meetings stopped once she learned how to correctly do the reports. McCarthy also states that she might not see Yonkers for several days, and when they did speak, it was just to say hello or so see how things were going. (ECF No. 51-1 at PageID.449.) Based on these facts, a reasonable jury could conclude that McCarthy performed the essential functions of her position without significant interaction with other Forge employees.

Next, Forge contends that allowing McCarthy to work from home would have required it to remove essential functions from her job and distribute them to her co-workers. Forge argues that "Plaintiff's job required her to gather and review confidential files containing employee personal, medical, and financial information that Forge received via fax and mail," and that "[r]equiring other employees to complete these essential functions is *per se* unreasonable." (ECF No. 48 at PageID.164.) While it is an accurate statement of law that an employer is not required to reallocate essential functions as a reasonable accommodation, *see Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999), and *Keith v. County of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013), the parties dispute whether the gathering of mail and faxes was an essential function of Plaintiff's job or a marginal one (*compare* ECF No. 48, PageID.164, *with* ECF No. 51 at PageID.439).

It is undisputed that handling ACA issues (including tracking ADA enrollments of temporary staff), completing background checks, and responding to requests for employment

verification were essential functions of McCarthy's position. It is also undisputed that, in connection with those functions, she was required to gather and review documents that Forge received by mail and fax. McCarthy acknowledged this in her deposition. (ECF No. 48-1 at PageID.196.) She could not recall, however, how often she received requests for verification. (*Id.*) Yonkers testified that McCarthy handled documents received by mail or fax, including postcards sent to temporary employees regarding ACA enrollments that were returned to Forge as undeliverable and employment verifications. (ECF No. 48-4 at PageID.305–07.) Yonkers also noted that, "next to the [accounts payable] position, [McCarthy's position] gets the most mail." (*Id.* at PageID.308.) However, that does not provide the Court with an estimate of how much McCarthy received by mail or fax. Although McCarthy had no recollection during her deposition of how often she received employment verification requests, she states in her post-deposition affidavit that she received only "a limited amount of mail," and that employment verification requests "were infrequent, not even daily, and about 4-5 per week." (ECF No. 51-1 at PageID.450.) Even without the statement in her affidavit, there is a material issue of fact regarding whether the collection of documents received by fax or mail is an essential or marginal duty of McCarthy's position.

As to Forge's contention that it lacked the technology to provide McCarthy a secure connection for remote access to its network, McCarthy has presented sufficient evidence to create a triable issue of fact that this aspect of her request was reasonable. First, Forge witnesses Teran and Oele both testified that salaried employees (managers) were able to work from home because they had Forge-owned devices. (ECF No. 51-12 at PageID.483, 485; ECF No. 51-14 at PageID.12.) Second, Teran testified that following McCarthy's discharge, Forge installed a VPN server requiring two-factor identification for access. (ECF No. 53-2 at PageID.564.) This suggests

that Forge could have upgraded its network as part of an accommodation to McCarthy's disability. Finally, McCarthy has proffered anticipated expert testimony regarding the security features and related costs that were available to Forge to provide McCarthy a secure remote connection to allow her to work from home. (ECF No. 51-18 at PageID.511–12.) *See Mamola v. Group Mfg. Servs., Inc.*, No. CV-08-1687, 2010 WL 1433491, at *5 (D. Ariz. Apr. 9, 2010) (denying summary judgment because, while the defendant asserted that it denied the plaintiff's telecommuting request due to security concerns about its computer network, the undisputed record showed that it allowed other employees remote access to its network).

### c.    Failure to Engage in the Interactive Process

When an employee with a disability requests an accommodation, the ADA mandates that an employer must engage in an "individualized inquiry" based on an "interactive process" to determine whether the employee's disability disqualifies her from a particular position. 29 C.F.R. § 1630.2(o)(3); *Rorrer*, 743 F.3d at 1040. "Once an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Hostettler v. College of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018). The purpose of the process is to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome these limitations. "A proper evaluation involves consideration of the applicant's personal characteristics, his actual medical condition, and the effect, if any, the condition may have on his ability to perform the job." *Keith*, 703 F.3d at 923.

In the Sixth Circuit, "a failure to engage in the interactive process is not an independent violation of the ADA." *Keith*, 703 F.3d at 929. To demonstrate a violation of this duty, a plaintiff "must show that a reasonable accommodation was possible." *Id.* Here, there is a factual dispute as to whether McCarthy proposed an accommodation that is objectively reasonable; thus her failure to engage in the interactive process claim survives.

21

Forge argues that the undisputed evidence shows that it engaged in the interactive process by accommodating McCarthy's request to park closer to the door and her requests for a leaves of absence. (PageID.167.) However, the record also notes that when McCarthy asked for a work-from-home accommodation, the response was simply that "[l]etting [her] work from home [was] just not going to be an option." (ECF No. 51-4, PageID.459.) There is no evidence that Forge engaged in any meaningful discussion of its reasons for the denial or possible solutions to its objections. And ultimately McCarthy was terminated when she could not return to work, and Forge did not agree to further extend her leave of absence.

Finally, a word about Forge's comparison of *Ford*, *supra*, to this case is in order. Its assertion that "the facts here and in *Ford* are nearly identical" (ECF No. 53 at PageID.547) is inexplicable. If that were true, McCarthy's job performance and attendance, like Harris's in *Ford*, would have been abysmal. *See* 782 F.3d at 760 (noting "several years of subpar performance and high absences"). Those facts are not here. McCarthy would have failed at three (or at least one) previously-authorized telework arrangements and three (or at least one) plans to improve her performance, leading this Court to conclude that "[t]he ADA does not give her a seventh try." *Id.* at 763. Those facts are also not present here. Lastly, McCarthy would have admitted that almost half of her main responsibilities could not be performed from home. *Id.* at 759. Not here either. In fact, the Sixth Circuit stressed that the foregoing facts "[s]eal[ed] the deal" for finding Harris's work-from-home request unreasonable. *Id.* at 763. These are not the only stark differences, but they make the point: the facts here are not even close to those in *Ford*.

Therefore, Forge's motion for summary judgment as to Plaintiff's failure to accommodate claims is denied.

### 2.      Compensatory and Punitive Damages/Conversion Claim

Forge argues that it is entitled to summary judgment on McCarthy's claims for compensatory and punitive damages for her claims under the ADA and PDCRA and on McCarthy's claim for conversion. McCarthy did not respond to Forge's arguments on those issues, thereby forfeiting those claims. *Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013). The Court will grant summary judgment on those claims.

## IV.   Conclusion

For the foregoing reasons, the Court will **DENY** Forge's motion to strike and **GRANT IN PART AND DENY IN PART** Forge's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Forge's motion to strike (ECF No. 52) is **DENIED** and Forge's motion for summary judgment is **GRANTED** with regard to McCarthy's claim for compensatory damages on her ADA/PWDCRA claims and conversion claim and denied as to her failure to accommodate/engage in the interactive process claims.

Dated: March 30, 2022                     /s/ Sally J. Berens
                                        SALLY J. BERENS
                                        U.S. Magistrate Judge

23